# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

FILED MAR 20 2000 CLARENCE MADDOX CLERK U.S. DIST. CT. S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

HOWARD SILVERA, AND
CHETWOOD JOHNSON

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4057-SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 17, 2000__ in __Broward__ county, in the __Southern__ District of __Florida__ and elsewhere, the defendants, with the intent to deceive conspired to, and actually made, utter and possessed a counterfeit security of an organization

in violation of Title __18__ United States Code, Section(s) __371, 513(a)__

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following facts:
                               Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:   [x] Yes  [ ] No

Kent T. Hukill
Special Agent, Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence,

March 18, 2000                                at   Fort Lauderdale, Florida
Date                                               City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                 Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

1. I, Kent T. Hukill, being duly sworn, depose and state that I am presently employed as a Special Agent with the Federal Bureau of Investigation, and have been so employed since September, 1997.

2. I am presently assigned to the financial institution fraud squad. My responsibilities include investigation of all financial institution fraud, including counterfeit securities, bank embezzlement, and mortgage fraud. I am law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of Title 18, United States Code, Section 3056.

3 I have participated in the investigation of the offenses described herein. The following information is known to me personally, or was reported to me by agents of the Federal Bureau Of Investigation. This information was also obtained from conversations with other law enforcement personnel, local businesses, and an officer of financial institution.

4. On or about March, 15, 2000, Lorie Yarchin, Senior Vice President and Chief Operating Officer, of PineBank, N.A., advised the FBI that she had discovered a counterfeit check payable to "RM & E", Recording Media and Equipment, Inc., in RM & E's daily deposits. The check was Cashier's Check No. 068768, in the amount $111,200 drawn on PineBank. She further advised that she had discovered a second counterfeit PineBank Cashier's Check, payable to Tiger Direct.Com.("Tiger") The Tiger check was Cashier's Check No. 068767, in the amount of $9,395.80, drawn on PineBank.

5. On or about March 16, 2000, John Bartz of R M & E, advised that he had spoken to an individual who identified himself a "Jim Mason," who ordered electronic equipment and stated

1

that he wanted the electronic equipment delivered to 5982 NW 21st Street, Lauderhill, Florida, 33313. Bartz advised that he had received Cashier's Check No. 068768, in the amount $111,200.00, drawn on PineBank, via USPS Express mail from "Jim Mason" at the same 5982 NW 21st Street, Lauderhill, Florida, 33313.

6. On or about March 16, 2000, Cecilia Acevedo, of Tiger advised that an individual who identified himself as "Mark Russell" had ordered electronic equipment, and had sent, by mail, Cashier's Check No. 068767, in the amount of $9,395.80, drawn on PineBank. The return address on the envelope was 1740 N.W. 60th Avenue, Sunrise, Florida, 33313, the same address, which he designated for delivery of the equipment which he ordered..

7. On March 16, at about 3 p.m., an individual identifying himself as "Mark Russell" contacted Acevedo at Tiger, inquiring about his delivery. She advised that it would be delivered the following day. She further advised that it had been delayed because he failed to provide a suite number. He indicated that his suite number was suite number 1 and that he would be waiting for the equipment. Acevedo's Caller I.D. identified the originating phone number as 954/733-8167.

8. On about March 17, 2000, at about 9:30 a.m, an individual identifying himself as "Jim Mason" had telephonically contacted John Bartz inquiring about the delivery. Bartz told him that the delivery truck was coming in about an hour and would be at his house afterwards. Bartz' Caller I.D. identified the originating phone number as 954/733-8167.

9. Telephone number 954/733-8167 was traced to a public pay telephone whose address is 2253 NW 59h Terrace, Lauderhill, Florida.

10. On or about March 17, 2000, the FBI attempted a controlled delivery of the Tiger Order to "Mark Russell" at 1740 N.W. 60th Avenue. As I approached the building, I observed a black

male in front of Suite Number 1, of that building. When he observed me, he walked down the block. I knocked on Suite Number 1, but there was no response. The unidentified black male returned. I asked him whether he was Mark Russell, he said that was not, I asked whether he lived in Suite 1, he said that he did, but that he did not a know a Mark Russell nor did a Mark Russell live there. He entered the apartment. One minute later, I saw him depart northbound in his car. This individual was later identified as CHETWOOD JOHNSON.

11. On or about March 17, 2000, the FBI attempted a controlled delivery to of the RM & E order to "Jim Mason" at 5982 NW 21st Street, Lauderhill, Florida. When agents arrived at the address, they observed a black male waiving the delivery truck towards him. He was standing in front of the garage that belonged to 5964 NW 21st Street, Lauderhill, Florida, 33313. He identified himself as Jim Mason's assistant, John Brockwell, and advised that he was authorized to accept delivery. S/A Langdon, indicated that he needed to speak to Mason. Brockwell stated that Mason was not available. S/A Langdon asked him for identification; Brockwell said that he did not have any. During this exchange between S/A Langdon and Brockwell, JOHNSON arrived at this location. "Brockwell" signed a receipt, accepting delivery.

12. The agents identified themselves to both "Brockwell" and JOHNSON. When asked to produce identification, "Brockwell" produced a wallet which contained a driver's license which identified him as HOWARD SILVERA. The picture in the Driver's License matched his appearance and his address was 5964 NW 21st.

13. When interviewed, JOHNSON advised that on or about March 15, 2000, SILVERA and he were arrested by the Sunrise Police for attempting to pass a counterfeit check. He advised that at about 5:30 p.m., SILVERA and he had gone to an Office Depot, located at 3426 North

University Drive, Sunrise, Florida, 33351, and priced computers. They left the store and SILVERA telephonically contacted an individual and advised that individual of the price of the computers. He further advised that shortly after 8 p.m., an individual known to him as Glen, driving a yellow Honda Yellow Prelude arrived at the Office Depot parking lot. SILVERA approached the car. Thereafter, JOHNSON saw that SILVERA had a NationsBank check in the amount of approximately $14,000. When SILVERA attempted to pass this check at Office Depot, he used a false identification identifying SILVERA as CHETWOOD JOHNSON.

14. The Sunrise Police was contacted and confirmed that JOHNSON and SILVERA were in fact arrested for attempting to pass a counterfeit cashiers' check in the amount of $14,446.45. They confirmed that JOHNSON and SILVERA had attempted to pass this check at Office Depot.

15. JOHNSON advised that he knew that the Office Depot check was counterfeit. He further advised that he was aware that the checks sent to RM & E and to Tiger were also counterfeit. JOHNSON indicated that "Glen" "made" the checks. SILVERA, "Glen" and he had met on three previous occasions. The first meeting was on or about March 7, 2000, just outside of SILVERA's house where SILVERA and Glen discussed a delivery being "screwed up" regarding a PineBank check. The Tiger delivery and the RM & E delivery was also discussed at this time. The second meeting was on or about March 9, 2000, where SILVERA told Glen to make sure to use a NationsBank check as opposed to PineBank. The third meeting was the one which occurred at Office Depot. JOHNSON identified that handwriting on the envelope to RM & E and to Tiger as that of SILVERA (see paragraphs 5 and 6).

16. SILVERA admitted to the Office Depot arrest. SILVERA had advised that he had received the check from "John Brockwell" who had received it from Jim Mason. SILVERA advised that

4

he met with "Jim Mason" following his arrest. Jim Mason told SILVERA that the Office Depot check was not counterfeit, that he had been arrested for using a false identification. When asked by the FBI why he used a false identification, he stated that he used a false identification because it was a "big check." He denied knowing that it was counterfeit. When asked why he used the name of "John Brockwell" for the RM & E delivery he stated that he did that because Jim Mason had told him to use that name because RM & E was told that John Brockwell would be receiving the delivery. *Following Silvera being placed under arrest, Silvera agreed to place a controlled call to Jim Mason. Silvera was taken from the police station to a public telephone. Upon arrival at the telephone, he jack off running. Silvera was apprehended approximately a half a mile away.*

17. This affidavit contains facts known to your affiant but is does not contain each and every fact and detail.

19. Based on the above information, I have probable cause to believe that others, both known and unknown have conspired together to, knowingly and with intent to defraud, obtain money or funds under the control of a financial institution by means of false or fraudulent pretenses, by the counterfeiting of checks and the uttering of same check, all the above in violation of Title 18, United States Codes, Section 513(a) -Counterfeit Securities of the State and Private Entities and Title 18, United States Code, Section 371 - Conspiracy.

**FURTHER AFFIANT SAYETH NOT.**

_____
KENT T. HUKILL
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to
Before me this _____ day
of March, 2000.

_____
BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

5